# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2009-CT-00981-SCT

*SCOTT HARRISON AND MONA HARRISON*

*v.*

*MAYOR AND BOARD OF ALDERMAN OF THE*
*CITY OF BATESVILLE AND MEMPHIS STONE*
*& GRAVEL COMPANY*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 05/13/2009 |
| TRIAL JUDGE: | HON. ANDREW C. BAKER |
| COURT FROM WHICH APPEALED: | PANOLA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | PAUL B. WATKINS, JR. |
| | POPE S. MALLETTE |
| ATTORNEYS FOR APPELLEES: | BENJAMIN E. GRIFFITH |
| | DANIEL J. GRIFFITH |
| | MICHAEL S. CARR |
| | LAUREN WEBB CARR |
| | ROBERT T. JOLLY |
| | E. PATRICK LANCASTER |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND REMANDED - 11/03/2011 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**LAMAR, JUSTICE, FOR THE COURT:**

¶1.     In this certiorari case, we consider whether the Mayor and the Batesville Board of

Aldermen (collectively the "Board") erred in granting a variance to allow mining in an area

zoned single-family residential and community business. The Mississippi Court of Appeals

found that it had and reversed and rendered. However, its opinion provided little discussion of the applicable zoning ordinance governing variances. That ordinance allows the Board to grant a variance due to "practical difficulties or unnecessary hardships." While the Batesville Code[1] does not define these terms, this language originated in the 1920s and is used in other jurisdictions.[2] While the law and judicial interpretations from other jurisdictions do not bind us, they are helpful in cases where we have no precedent of our own. Therefore, we look to those jurisdictions to aid us in deciding whether the Board applied the correct legal standard and whether its decision to grant the variance is supported by substantial evidence.

**Facts**

¶2. Memphis Stone & Gravel Company submitted to the Board a variance request to mine sand and gravel from eighteen acres[3] leased from various property owners. This tract of land

---

[1]We have used a copy of the Batesville Code attached as an exhibit to the Harrisons' brief, as it is our understanding that this version was in effect at the time the variance was granted. It was effective May 14, 1992. The Board does not contend that this is an incorrect version.

[2]*Matthew v. Smith*, 707 S.W.2d 411, 414 (Mo. 1986).

[3]The entire leased tract is sixty-five acres, eighteen of which are in the Batesville city limits.

is zoned single-family residential (R-1)[4] and community business (C-2)[5] and is contiguous with Memphis Stone's existing plant operation located in the county. Under the Batesville Code, mining only can be a conditional (as opposed to permitted) use in areas zoned agricultural and industrial.[6]

¶3.     In support of its zoning application, Memphis Stone attached maps of the area, promotional materials for the company, and an operations narrative. The operations narrative provided general information on the project and mining process and also provided the following information:

> Based on national and local trends it takes approximately 10 tons of aggregate each year for new construction and to maintain our existing infrastructure. The

---

[4]R-1 districts "are designed primarily to accommodate single-family detached residential uses (other than mobile homes) at medium densities in areas served by public water and sewer facilities. Two-family and multi-family residences are allowed in these districts only in the context of planned residential developments." Batesville, Miss., Code § 301(c).

[5]C-2 districts are:
designed to accommodate commercial development on a scale that is less intensive than that permitted in a C-1 district. A lesser intensity of development is achieved through setback, height and minimum lot size requirements that are more restrictive than those applicable to the C-1 district. The types of uses permissible in these districts are generally similar to the types permissible in a C-1 district, except that additional automobile-oriented businesses (e.g. drive-in banks and restaurants not allowed in the C-1 district are permissible in these districts). The C-2 thus may provide transition in some areas between a C-1 district and a residential district or may provide for a smaller scale shopping center that primarily serves one (1) neighborhood or area of the city (as opposed to a regional shopping center).

Batesville, Miss., Code § 302(c).

[6]Batesville, Miss., Code § 401.

3

growth in Tate County [*sic*][7] demands a good source of local aggregate. Memphis Stone & Gravel Company believes this deposit will be an asset to the local economy and will likely be lost to future residential development if not managed as a resource for construction material.

¶4.  The variance request was first approved by the City of Batesville Planning Commission.[8]  The Planning Commission's minutes for May 19, 2008, reflect that:

> There next came on for consideration the variance request of Memphis Stone and Gravel, to have allowed the mining of sand and gravel in the R-1, Residential, and C-2, Commercial Zones.  Alan Parks of Memphis Stone and Gravel gave a presentation concerning the property being leased from the Haire Family and Seale Family located on the west side of Hwy. 35, South. If the variance is allowed, the sand and gravel will be conveyored to the existing wash plant on Hwy. 35, South for processing.

The Planning Commission's minutes also show that a motion to recommend approval of the variance "carried unanimously."

¶5.  Next, the Board held a public hearing on the variance request.  The Board's minutes reflect that "Alan Parks and Bill Kelly of Memphis Stone & Gravel were present and spoke in support of this request.  Scott Harrison, Mona Harrison and Bill Joiner (residents in said area) was [*sic*] present in opposition to the request." Without any further discussion reflected in the minutes, the Board voted to take the variance request under advisement until its next regular meeting.  The minutes of the next regular meeting reflect that:

> Alan Parks of Memphis Stone & Gravel was present and answered questions from the Board regarding said request.  Scott Harrison (resident in said area)

---

[7]The City of Batesville is located in Panola County, not Tate County.

[8]The Batesville Code provides that the "board of appeals" has jurisdiction to grant a variance, and from that decision an appeal is made to the mayor and board of aldermen, who are to make "findings" after a "hearing."  Batesville, Miss., Code § 1205.  No party makes any reference to the board of appeals or asserts any error as to the procedure taken in this appeal.

4

was present in opposition to the request . . . . it was ordered that the aforesaid request contained of Memphis Stone & Gravel for a variance for the mining and transportation of sand and gravel in a C-2, Commercial District, and an R-1, Single Family Residential District which request was approved by the City Planning Commission and *which variance is necessary in order to avoid practical difficulties or unnecessary hardship* on the use and development of said property be and it is hereby approved and said variance is hereby granted in said application.[9]

¶6.     Thereafter, at its next meeting, a Board member moved to rescind the variance grant, but the motion failed. The member then moved to amend the order granting the variance so that it would include various conditions. Before the Board finalized the conditions, it heard from Paul Watkins, the Harrisons' attorney. Watkins stated that the Board's decision to grant a variance would change the character of the land and constitute spot zoning, and that the record before the Board contained no reason for its approval. He asserted that Memphis Stone wanted the variance for financial gain and convenience, which are insufficient to show practical difficulty or unnecessary hardship. Watkins also placed in the record a copy of a letter that he previously had sent the Board. In his letter, Watkins argued the variance would have a negative effect on surrounding property, cause a nuisance, and fail to provide any additional employment or tax base for the City.

¶7.     The Board also heard from the president of Memphis Stone, who addressed only the proposed conditions, one of which was reclamation of the land to its original state. The president stated that reclamation to the original state was "impossible" since his company would be "taking out 40 to 60 [feet] of material . . . there is no way . . . to meet the same topography that is there now. I'm going to have to create a lake out there." Ultimately, the

---

[9]Emphasis added.

5

Board upheld the variance with the following conditions: (1) a two-and-one-half-year time limit with review every six months; (2) operations confined to weekdays from 7:00 a.m. to 5:00 p.m.; (3) the erection and construction of berms to screen the project from neighboring property and the road; (4) the watering of objectionable dust; and (5) the imposition of fines for any violations of the conditions.

¶8. The Harrisons appealed the variance to the circuit court via a bill of exceptions in compliance with Mississippi Code Section 11-51-75. By agreed order, Memphis Stone was allowed to intervene in the appeal.[10] The circuit court held a hearing and heard arguments from the Harrisons, the Board, and Memphis Stone. The Harrisons argued that substantial evidence did not support the Board's decision, as Memphis Stone had failed to present any evidence of hardship to the Board. The Harrisons argued that, in order to show hardship, Memphis Stone must submit evidence that a unique condition of the property prevented it from making full use of the land. The Harrisons argued that increased profitability and convenience of location do not establish hardship.

¶9. They also argued that the variance can be only a minor deviation from the applicable zoning ordinances to be consistent with the spirit of those ordinances. The Harrisons argued that the variance constituted a major change to the zoning ordinances that could be proper

_____

[10]Because the Harrisons agreed to allow Memphis Stone to intervene, we do not address their argument that Memphis Stone should be dismissed as a party to this appeal under our recent decision, *City of Jackson v. United Water Servs., Inc.*, 47 So. 3d 1160, 1164-65 (Miss. 2010) (ruling that the circuit court was correct in denying a party's motion to intervene in an appeal under Mississippi Code Section 11-51-75, as no authority exists for granting such a motion filed by a nonaggrieved party).

only upon rezoning. Last, they argued that public need was not an appropriate factor for the court to consider.

¶10. In response, the Board argued that Memphis Stone had set forth in its operations narrative that ten tons of aggregate is needed for construction and infrastructure and that these minerals would be lost if the land was developed as currently zoned. It also argued that the Board members had visited the existing mine operation in the county to see how it operated and to determine how intrusive it would be if extended into the city.[11] The Board asserted that it had considered the size, character, and location of the land.

¶11. Memphis Stone argued that, under the Batesville Code, it was not required to show hardship.[12] It asserted that it only had to show by a preponderance of evidence that it was entitled to a variance. Memphis Stone also argued that, at the reclamation stage, it would fill in the quarry and plant vegetation, and that, within five years or more, the land would be "suitable for any use" and "any type of structures."[13]

¶12. At the conclusion of the hearing, the court took the matter under advisement. It subsequently issued a written order, in which it affirmed the Board's decision to grant the variance. It found the Batesville Code required proof of "practical difficulties or unnecessary hardship" and that Memphis Stone had provided "ample evidence" to justify the variance.

---

[11]This information was not included in the record (e.g., the bill of exceptions), and an appellate court can review only evidence contained in the bill of exceptions. *Nelson v. City of Horn Lake ex. rel. Bd. of Aldermen*, 968 So. 2d 938, 946-47(Miss. 2007).

[12]Memphis Stone does not argue this on appeal.

[13]This too was not included in the bill of exceptions, and in fact, directly contradicts the evidence Memphis Stone presented to the Board.

It noted that Memphis Stone had presented "evidence of a public need for a good source of local aggregate and the project would be a good asset for the local community's economy that will likely be lost to future residential development based on the location of the property."

¶13.    Aggrieved by the trial court's affirmance, the Harrisons appealed, and the case was assigned to the Court of Appeals. Relying upon our decision, ***Drews v. City of Hattiesburg***,[14] the Court of Appeals reversed and rendered, finding the variance constituted a "classic case of spot zoning."[15] And "[n]otwithstanding that finding, [it went on to] determine whether Memphis Stone proved that there was a public need or a compelling reason for the variance."[16] It concluded that the record lacked substantial evidence to support a finding of public need or that the variance would be an asset to the local economy.[17] It further found that the record "lacks evidence of any 'practical difficulty or unnecessary hardship'" without any analysis or explanation of those terms.[18] We granted certiorari to clarify the standards that should apply when a zoning ordinance uses the language "practical difficulties or unnecessary hardships" for granting a variance.

---

[14]***Drews v. City of Hattiesburg***, 904 So. 2d 138 (Miss. 2005).

[15]***Harrison v. Mayor & Bd. of Alderman***, No. 2009-CA-00981-COA, ¶ 11, 2010 WL 4188264 (Miss. Ct. App. Oct. 26, 2010).

[16]***Id.***

[17]***Id.*** at ¶14.

[18]***Id.*** at ¶15.

**Discussion**

¶14.    A variance generally is defined as the "right to use or to build on land in a way prohibited by strict application of a zoning ordinance."[19]  The grant or denial of a variance is adjudicatory, rather than legislative.[20]   In reviewing adjudicatory decisions by zoning boards, we have ruled that:

> the burden is upon the applicants to prove by a preponderance of evidence that they have met the elements/factors essential to obtaining the [requested relief]. If the Board's decision is founded upon substantial evidence, then its is binding upon an appellate court, *i.e.*, the Circuit Court and this Court.  This is the same standard of review which applies in appeals from decisions of other administrative agencies and boards.[21]

This Court will reverse only if the decision "1) is not supported by substantial evidence, 2) is arbitrary or capricious, 3) is beyond the scope or power granted to the agency, or 4) violates one's constitutional rights."[22]  We review questions of law under a de novo standard.[23]

**I.      Whether the variance resulted in spot zoning.**

¶15.    The Harrisons argue that the variance constitutes spot zoning, as it is a dramatic departure from the current zoning ordinances and favors Memphis Stone to the exclusion of the surrounding property owners.  Spot zoning "is ordinarily used *where a zoning ordinance*

---

[19]Gail Gudder, *Rathkopf's the Law of Zoning and Planning*, § 58.1 (Thomson/West Aug. 2006).

[20]83 Am. Jur. 2d *Zoning and Planning* § 749 (Westlaw).

[21]***Barnes v. Bd. of Sup'rs, Desoto County***, 553 So. 2d 508, 511 (Miss. 1989).

[22]***Sprouse v. Miss. Employment Sec. Comm'n***, 639 So. 2d 901, 902 (Miss. 1994).

[23]***Drews v. City of Hattiesburg***, 904 So. 2d 138, 140 (Miss. 2005).

*is amended* reclassifying one or more tracts or lots for a use prohibited by the original zoning ordinance and out of harmony therewith. Whether such an amendment will be held void depends upon the circumstances of each case."[24] But this definition is not applicable to a variance. However, the Court of Appeals relied on **Drews v. City of Hattiesburg**, where this Court found "spot zoning" after reviewing the grant of six variances to build a 60,000 square foot medical office in an area originally developed for residential housing.[25] In **Drews**, we ultimately held the petitioners "failed to present any evidence" to support the six variances, and that the City had "attempted to bypass the safeguards provided by the *rezoning* process in that the need for a variance must be proven only by a preponderance of the evidence while the need for *rezoning* must be proven by clear and convincing evidence."[26] In other words, this Court found the proposed variances were not "minor departures" from the applicable zoning ordinances, and that these departures from use and area requirements could be obtained only through rezoning and not a variance request.[27] Therefore, we found the Board acted beyond its scope or power when it granted the variances.[28]

---

[24]**McKibben v. City of Jackson**, 193 So. 2d 741, 744 (Miss. 1967) (emphasis added).

[25]**Harrison**, 2010 WL 4188264 *2-4 (citing **Drews**, 904 So. 2d at 141).

[26]**Drews**, 904 So. 2d at 142 (emphasis added).

[27]**Id.**

[28]See **id.**

¶16.    While this Court used the terminology "spot zoning" in the **Drews** opinion, we expressly used the term *rezoning* in the holding.[29] As noted in the learned treatise, *Rathkopf's the Law of Zoning and Planning*:

> The grant of a variance or special exception that has the same effect as a small parcel rezoning cannot be attacked as spot zoning. The distinction lies in the difference between the traditionally legislative process of amending a zoning ordinance and the administrative act of granting a variance or special exception. Neither of the latter two involve a zone change, *but are permitted when certain conditions exist.*[30]

¶17.    Therefore, the proper question is not whether the variance is "spot zoning" but whether the Board acted within its scope and power under the applicable zoning ordinances. Connected with that determination is whether substantial evidence supports the Board's decision to grant the variance.

## II. Whether the Board erred in granting Memphis Stone's variance request.

¶18.    The Legislature has provided "the governing authority of any municipality" with the power to enact zoning regulations "for the purpose of promoting health, safety, morals, or the general welfare of the community[.]"[31] As previously noted, the Board had zoned the

---

[29]*Id.* at 141-42.

[30]Edward H. Ziegler, Jr., *Rathkopf's the Law of Zoning and Planning*, § 41.2 n.1 (Thomson/West Aug. 2006) (emphasis added).

[31]Miss. Code Ann. § 17-1-3(1) (Rev. 2003). Section 17-1-3(1) provides:
for the purpose of promoting health, safety, morals, or the general welfare of the community, the governing authority of any municipality . . . [is] empowered to regulate the height, number of stories and size of building and other structures, the percentage of lot that may be occupied, the size of the yards, courts and other open spaces, the density of population, and the location and use of buildings, structures and land for trade, industry, residence or other purposes . . . .
*Id.*

land at issue as single-family residential and community commercial.  But Memphis Stone

requested a variance to change the *use* of this zoned area.  A "use" variance is one of two

types of variances:

> With a 'use' variance, the owner is allowed to engage in a use of the land
> prohibited by the zoning ordinance.  With a 'nonuse,' or 'area' variance, the
> owner must comply with the zoning ordinance's limitations on use of the land
> but is allowed to build or maintain physical improvements that deviate from
> the zoning ordinance's nonuse limitations.[32]

¶19.    And this Court noted the distinction in ***Drews***:

> Variances were conceived initially as a means for granting relief from height,
> bulk, and location restrictions in the ordinances which rendered use of the
> property impossible or impractical.  No conceptual problems arise when the
> variance is granted to authorize minor departures from the terms of the
> ordinance; e.g. to permit a landowner to place the structure on his lot nearer
> the lot line than is permitted by the set-back or side-yard requirements.  Such
> relief does not authorize a use inconsistent with the ordinance and,
> consequently, does not constitute rezoning under the guise of a variance . . . .
>
> On the other hand, serious questions arise when a variance is granted
> to permit a use otherwise prohibited by an ordinance; eg., a service station or
> a quick-stop grocery in a residential district.  The most obvious danger is that
> the variance will be utilized to by-pass procedural safeguards required for
> valid amendment.[33]

¶20.    In reviewing the grant of a variance, we start with the governing zoning ordinances.

"A city must follow its ordinance when granting [a] variance to a zoning regulation."[34]  The

---

[32]Gail Gudder, *Rathkopf's the Law of Zoning and Planning*, § 58.4 (Thomson/West Aug. 2006).

[33]***Drews v. City of Hattiesburg***, 904 So. 2d 138, 141 (Miss. 2005) (citing Robert C. Khayat & David L. Reynolds, *Zoning Law in Mississippi*, 45 Miss. L.J. 365, 383 (1974)).

[34]Mary E. Miller, *Encyclopedia of Mississippi Law New Topic Service*, *Variances and Exceptions* § 12 (2003) (citing ***Robinson v. Indianola Mun. Separate Sch. Dist.***, 467 So. 2d 911 (Miss. 1985)).

Batesville Code defines "variance" as "[a] grant of permission . . . that authorizes the recipient to do that which, according to the strict letter of this appendix, he could not otherwise legally do."[35] The Batesville Code also provides that the Board may "vary or modify the application of any of the regulations or provisions of the ordinance where there are *practical difficulties or unnecessary hardships* in the way of carrying out the strict letter of this ordinance, so that the spirit of this ordinance shall be observed, public welfare and safety secured and substantial justice done."[36]

¶21.    The Batesville Code provides no definition or guidelines for determining the meaning of "practical difficulties or unnecessary hardships." And neither the record nor the Board's decision provides any insight into what criteria it used to determine the meaning of these terms. The Board simply stated that the "variance is necessary in order to avoid practical difficulties or unnecessary hardship on the use and development of said property be [*sic*] and it is hereby approved and said variance is hereby granted in said application."

¶22.    While arguably the imposed conditions show the Board's effort to comply with the "spirit of the ordinance" so that "public welfare and safety secured and substantial justice [be] done[,]" they fail to shed any light upon what "practical difficulties or unnecessary hardships" existed, authorizing the Board to grant the variance. The Board merely provided a conclusion with no findings of fact.[37] As noted by another jurisdiction when reviewing a

---

[35]Batesville, Miss., Code § 201.

[36]*Id.* at § 1204 (emphasis added).

[37]*See **Matter of Gilbert v. Stevens***, 284 A.D. 1016, 1016, 135 N.Y.S.2d 357 (N.Y.A.D. 3 Dept. 1954).

variance grant, "[f]indings of fact which show the actual grounds of a decision are necessary for an intelligent review of a quasi-judicial or administrative determination."[38] Similarly, in *Barnes v. Board of Supervisors*, this Court ruled that Boards should make findings of fact when granting or denying conditional use permits, which are also quasi-judicial decisions.[39]

¶23. Although in *Barnes* we upheld the Board's decision despite its failure to make specific findings of fact, we did so because the record clearly supported the Board's decision.[40] Here, the only "evidence" found in the record before this Court was contained in Memphis Stone's operations statement: (1) that ten tons of aggregate is needed each year for new construction and to maintain existing infrastructure; (2) that it believes the deposit will be an asset to the local economy; and (3) that the deposit would otherwise be lost to future development.

¶24. The Harrisons argue that this does not constitute evidence of hardship, and that nothing in the record shows that the property is unsuitable for the purpose for which it is zoned -- residential and light commercial use. They further argue that Memphis Stone failed to show that it would suffer unusual hardship or difficulty greater than any other resident in the city's R-1 and C-2 districts. Conversely, the Board argues that it found the variance would provide a good source of local aggregate and a benefit to the local economy. It also

---

[38] *Id.*

[39] *Barnes v. Bd. of Supervisors, DeSoto County*, 553 So. 2d 508, 511 (Miss. 1989).

[40] *Id.*

14

argues that its decision was based on its common knowledge of the land and familiarity with the ordinance.[41]

¶25.   The language "practical difficulties" and "unnecessary hardships," as well as other aspects of the Batesville zoning ordinance, originated in a 1920 amendment to the General City Law of New York and the Standard Zoning Act prepared by the Department of Commerce in the 1920s.[42] The 1920 amendment provided that:

> Where there are *practical difficulties* in the way of *carrying out the strict letter of such ordinance*, the board of zoning appeals shall have the power to vary or modify the application of any of the regulations or provisions of such ordinance relating to the use, construction or alteration of buildings or structures, or the use of land, *so that the spirit of the ordinance shall be observed, public safety and welfare secured and substantial justice done.*[43]

And the Standard Zoning Act provided that:

> To authorize upon appeal in specific cases such variance from the terms of the ordinance as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in *unnecessary hardship*, and *so that the spirit of the ordinance shall be observed and substantial justice done.*[44]

---

[41]While the Board may consider information based on its "common knowledge," ***Bd. of Aldermen of Town of Bay Springs v. Jenkins***, 423 So. 2d 1323, 1327 (Miss. 1982), these facts should be disclosed in the record.  83 Am. Jur. 2d, *Zoning and Planning* § 714 (Westlaw).

[42]***Matthew v. Smith***, 707 S.W. 2d 411, 414 (Mo. 1986).

[43]*Id.* (emphasis added).

[44]*Id.* (emphasis added).

¶26.    While some courts view the terms "practical difficulty" and "unnecessary hardship" as interchangeable,[45] other jurisdictions follow New York's approach and hold that "practical difficulty" applies to a nonuse or area variance while "unnecessary hardship" applies to a use variance.[46] Jurisdictions that distinguish the two terms among nonuse and use variances do so because "an area variance is a relaxation of one or more incidental limitations to a permitted use and does not alter the character of a district as much as a use not permitted by the ordinance."[47] Even those jurisdictions that construe "practical difficulties or unnecessary hardships" together apply a more rigorous standard for proving a use variance.[48] Likewise, in **Drews,** we noted the "serious questions" that arise when a Board grants a use variance rather than a nonuse or area variance and insinuated that a higher burden (e.g., unnecessary hardship) applies to a use variance. Therefore, we follow the New York approach and hold that the phrases "practical difficulty" and "unnecessary hardship" apply to nonuse and use variances respectively, as the applicable zoning ordinance closely follows the 1920 New York amendment.  We adopt the following definition for "unnecessary hardship":

> [T]he record must show that (1) the land in question cannot yield a reasonable return[49] if used only for a purpose allowed in that zone; (2) that the plight of

[45] **Id.** at 416; McQuillin, *The Law of Municipal Corporations, Unnecessary Hardship or Difficulty* § 25:179.37 (3d ed. Westlaw).

[46] **Matthew**, 707 S.W. 2d at 416.

[47] **Id.**

[48] **Palmer v. Bd. of Zoning Adjustment**, 287 A.2d 535, 541 (D.C. 1972).

[49] As noted by the Missouri Supreme Court in adopting the New York definition, the landowner must establish "reasonable return" by submitting evidence that "he or she will be deprived of all beneficial use of the property under any of the permitted uses" and this

16

the owner is due to unique[50] circumstances [of the land for which the variance is sought] and not to the general conditions in the neighborhood which may reflect the unreasonableness of the zoning ordinance itself; and (3) that the use to be authorized[51] by the variance will not alter the essential character of the locality.[52]

¶27.    Whether the hardship is self-created is also relevant to the determination of granting or denying a use variance.[53]  Similarly, while not determinative of hardship, the Board should consider the fact Memphis Stone entered into these leases with actual or constructive knowledge that the land was zoned R-1 and C-2.[54]  The Board also must ensure that the variance complies with "the spirit of [the] ordinance" and that "public welfare and safety [be] secured and substantial justice done."[55]  This requirement "limits the authority of the board

---

requires "actual proof, often in the form of dollars and cents evidence." **Matthew**, 707 S.W. 2d at 417.

[50]"[U]niqueness does not require that only the parcel of land in question and none other be affected by the condition that creates the hardship.  What is required . . . is that the hardship condition be sufficiently rare that if all similarly situated parcels in the zoning district were granted variances the district would remain materially unchanged."  Gail Gudder, *Rathkopf's the Law of Zoning and Planning*, § 58:11 (Thomson/West Aug. 2006) (citing **Matter of Douglaston Civic Ass'n v. Klein**, 416 N.E. 2d 1040 (N.Y. 1980)).

[51]A board should grant a use variance only if it is the "minimum that will afford relief."  *Id.* at § 58.12.

[52]**Matter of Otto v. Steinhilber**, 282 N.Y. 71, 76, 24 N.E. 2d 851 (1939).

[53]Gudder, *Rathkopf's the Law of Zoning and Planning* at § 58:22.  The New York legislature codified the definition of unnecessary hardship promulgated by the **Otto** court and added the requirement the applicant prove the hardship was not self-created.  **Matter of Sasso v. Osgood**, 657 N.E. 2d 254, 382 (N.Y. 1995).

[54]See *id.*

[55]Batesville, Miss., Code § 1204 (emphasis added).

only with respect to the scope and character of the relief to be granted by way of the variance."[56]

¶28.    In reviewing the record in this case, we find no evidence of "unnecessary hardship" as we now define that phrase. We further find the definition for unnecessary hardship does not take into account "public need" as Memphis Stone argues (and the trial court found), but instead focuses on any alleged "public detriment."[57]    Because this is a case of first impression, we vacate the decision of the Court of Appeals and reverse the trial court, remanding the case to the Board so the parties have the opportunity to present it with evidence in compliance with this opinion. Any evidence presented should be made part of the record, and the Board should provide specific findings of fact and conclusions of law to support any decision in this matter.

**Conclusion**

¶29.    We vacate the decision of the Court of Appeals and reverse the trial court and the Board, remanding to the Board for further proceedings consistent with this opinion.

¶30.    **REVERSED AND REMANDED.**

        **WALLER, C.J., CARLSON AND DICKINSON, P.JJ., RANDOLPH, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR.    KING, J., NOT PARTICIPATING.**

---

[56]Gudder, *Rathkopf's the Law of Zoning and Planning* at § 58:9. In other words, the Board does not have to grant the variance as requested; it may impose conditions or otherwise modify the variance so that it is the "minimum that will afford relief." *See* fn.44 *supra*.

[57]*See generally id.* at § 58:16 (public detriment is a factor in determining hardship, while public detriment *and public benefit* are considered under practical difficulties).