# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2012-CA-01283-SCT

*BAYMEADOWS, LLC, A MISSISSIPPI LIMITED*
*LIABILITY COMPANY d/b/a BAYMEADOWS*
*APARTMENTS*

*v.*

*THE CITY OF RIDGELAND, MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/13/2012 |
| TRIAL JUDGE: | HON. JOHN HUEY EMFINGER |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | J. LAWSON HESTER |
| ATTORNEYS FOR APPELLEE: | JERRY L. MILLS |
| | JAMES H. GABRIEL |
| | JOHN P. SCANLON |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND REMANDED - 02/06/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DICKINSON, P.J., KITCHENS AND CHANDLER, JJ.**

**DICKINSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1.    The Board of Aldermen for the City of Ridgeland ("the Board") denied Baymeadows, LLC's proposed repair plans to correct 1,478 cited code violations, and Baymeadows appealed the Board's decision. We hold that the Board did not adequately state its rationale for denying the proposed plans, and we remand for the Board either to issue Baymeadows a permit or provide an appropriate factual basis for its denial.

**FACTS AND PROCEDURAL HISTORY**

¶2.     Baymeadows, LLC ("Baymeadows") owns Baymeadows Apartments, a 264-unit apartment complex located in the City of Ridgeland ("Ridgeland"). Baymeadows purchased the property from Ridgeland Group, LLC, in 1998 and owned the property until its foreclosure in August 2013. On June 10, 2010, Ridgeland provided Baymeadows written notice and an order to correct 1,478 property and maintenance code violations. Baymeadow appealed the violations to the Board, which stayed any enforcement action until the disposition of the appeal. On August 24, 2010, after a lengthy hearing, the Board denied Baymeadows' appeal, and Baymeadows took no further action.

¶3.     After it failed to correct the violations, on February 2, 2011, Ridgeland commenced a criminal action against Baymeadows in the Municipal Court of the City of Ridgeland. A Ridgeland Department of Community Development code enforcement officer swore to 1,478 citations before the municipal court, and each alleged a violation of certain provisions of an unspecified municipal code. On April 14, 2011, Ridgeland withdrew all 1,478 citations previously filed, and it filed 1,478 new citations under the correct provisions of the City of Ridgeland Property and Maintenance Code. Ridgeland then served Baymeadows notice concerning the new citations.

¶4.     Prior to the adjudication of these violations, on April 21, 2011, the municipal court accepted Baymeadows into the Pretrial Diversion Program so that it might avoid prosecution of the code violations. Baymeadows signed a Pretrial Diversion Agreement ("PDA"), which

specified that Baymeadows must meet certain minimum requirements before submitting its

repair plans to the Board. In relevant part, the PDA stated:

> Baymeadows, LLC will submit by May 10, 2011, for approval its proposal for construction work and repairs to the Baymeadows Apartments to the Architectural Review Board, which submission shall include the following minimum requirements: (a) Site Plan; (b) Construction Phasing Plan/Safety Plan; (c) Erosion Control Plan and SWPPP; (d) Drainage Plan; (e) Landscape Plan; (f) Lighting Plan; (g) Architectural Rendering; (h) Interior Remodeling Plan; (i) Material and Color Sample Board. Baymeadows, LLC will conduct a camera inspection of all sanitary sewer lines on the West portion of the Baymeadows Apartments and, on the east portion of the property, only as to those sanitary sewer lines servicing Building 16, with a repair plan by June 7, 2011.

The PDA went on to state that:

> If a definitive and mutually acceptable agreement in all respects is reached between the City of Ridgeland and Baymeadows, LLC, with formal approval of the Architectural review committee and . . . the Board of Aldermen . . . no later than June 15, 2011, Baymeadow shall immediately apply for a valid building permit to be issued by the City of Ridgeland promptly thereafter.

¶5.     The PDA also contained a time frame for the completed construction, which stated

that Baymeadows should complete construction in three phases, and it must resolve all

remaining code violations by May 19, 2012. Lastly, the PDA stated that

> if a definitive and mutually acceptable agreement in all respects for the nature, details, scope and performance of the specific repairs and construction work at Baymeadows Apartments is not reached mutually between the City of Ridgeland and Baymeadows . . . not later than June 15, 2011, this Pretrial Diversion Agreement . . . shall be automatically deemed void and of no legal effect and shall be automatically fully rescinded . . . .

3

¶6.    After entering into the PDA, Baymeadows submitted its repair plans to the Department of Community Development for review.[1] In response, the Ridgeland City Planner and the Department of Community Development requested fifteen additional items, which it needed before Baymeadows could submit its plans to the Architectural Review Board. Baymeadows complied with the request and supplied the additional items.

¶7.    On May 18, 2011, Alan Hart, Director of the Community Development Department of Ridgeland, notified Baymeadows that the City Planner and Building Official had reviewed the submissions again and had found them complete; thus Baymeadows did not need to submit any additional items before making its presentation to the Architectural Review Board. On May 24, 2011, Baymeadows presented its repair plans to the Architectural Review Board, which approved the plans by majority vote.

¶8.    Thereafter, the Board placed Baymeadows' repair plans on its agenda for the June 6, 2011, work session and the June 7, 2011, formal session. Baymeadows appeared at both meetings and gave presentations concerning the improvements. On June 7, 2011, after considering the matter in executive session, the Board voted to deny Baymeadows' proposed repair plans. In its meeting minutes, the Board explained that it denied Baymeadows' repair plans because Baymeadows failed to "provide an adequate safety plan, erosion control plan,

---

[1]It should be noted that, according to Ridgeland's Developmental Review Procedures, applicants must receive developmental review approval before applying for a permit. Thus, Baymeadows had not yet applied for a building permit.

interior remodeling plan and did not provide the agreed camera inspection and repair plan for sewer lines."

¶9.    Baymeadows appealed the Board's denial to the circuit court, which affirmed the Board's decision, finding the decision was (1) supported by substantial evidence; (2) not arbitrary or capricious nor beyond the power of the City to make, and that it (3) did not violate any statutory or constitutional right of the appellant. Baymeadows now appeals to this Court, arguing that the Board improperly applied the terms of the PDA, instead of the applicable city ordinances, when determining whether Baymeadows' repair plans qualified for approval. Further, Baymeadows argues the Board's denial was not supported by substantial evidence, was arbitrary and capricious, illegal, beyond the power of the City of Ridgeland, and that it violated Baymeadows' Fourteenth Amendment substantive due-process and equal-protection rights and resulted in a "taking" under the Fifth Amendment.

## STANDARD OF REVIEW

¶10.    Under Section 11-51-75, "any person aggrieved by a judgment or decision of the board of supervisors, or municipal authorities of a city, town, or village may appeal within ten (10) days . . . in a bill of exceptions to the circuit court . . . ."[2] This Court will not reverse the decision of the municipality unless its decision is "arbitrary, capricious, discriminatory,

___

[2] Miss. Code Ann. § 11-51-75 (Rev. 2012).

5

or is illegal, or without a substantial evidentiary basis."[3] "Legal errors are subject to a *de novo* review."[4]

## ANALYSIS

### *The terms of the city ordinances, not the PDA, must govern the Board's decision.*

¶11.    Baymeadows asserts that it fully complied with all of the requirements outlined in Ridgeland's city ordinances, and the Board improperly based its denial on the inadequacy of documents required by the PDA but not the ordinances. Baymeadows argues that its compliance with the PDA is distinct from its ability to obtain Board approval of its repair plans. On the other hand, Ridgeland asserts that it considered the terms of the PDA when making its determination because Baymeadow asked the Board to grant a forebearance on code-violation enforcement–a provision of the PDA–throughout the repair process. Secondly, at oral argument, Ridgeland argued that, regardless of the PDA, the Board acted within the authority of the city's ordinances to deny Baymeadows' proposed repair plans. As explained below, we find Ridgeland could require the additional items under its city ordinances.

¶12.    Ridgeland's Development Review Procedures require development-review approval prior to the issuance of any building permit.[5] The ordinances further provide that, "in addition to meeting all of the requirements of the Zoning Ordinances, any applicant for a

---

[3] *Town of Florence v. Sea Lands, Ltd.*, 759 So. 2d 1221, 1223 (Miss. 2000) (citing *Faircloth v. Lyles*, 592 So. 2d 941, 943 (Miss. 1991)).

[4] *ABC Mfg. Corp. v. Doyle*, 749 So. 2d 43, 45 (Miss. 1999).

[5] Ridgeland, Miss., Developmental Review Procedure § 13-S-2 (1991).

building permit . . . shall submit the following plans. . . ":   (a) site plan; (b) a conceptual landscape plan; (c) architectural drawings shall conform to the building codes; (d) signs shall conform to the ordinances; (e) conceptual grading and drainage plans shall conform to the ordinances; (f) such other data as may be required by the Building Official or City Engineer.[6]

¶13.   The PDA requires that Baymeadows submit each of the following to the Board for review:  (a) site plan; (b) construction phasing plan/safety plan; (c) erosion-control plan and SWPPP; (d) drainage plan; (e) landscape plan; (f) lighting plan; (g) architectural rendering; (h) interior remodeling plan; (i) material and color-sample board. It also states that Baymeadows must conduct a camera inspection of all sanitary sewer lines on the west portion of the property and complete a camera inspection of the sanitary sewer lines servicing building 16 on the East portion of the property, with a repair plan created by June 7, 2011.

¶14.   Further, both the PDA and the city ordinances require approval from the Architectural Review Board prior to submitting these items to the Board for approval,[7] and Baymeadows received approval before submitting to the Board.  Then, Baymeadows presented its plans to the Board, and the Board denied them, stating only that Baymeadows "failed to provide an adequate safety plan, erosion control plan, interior remodeling plan and did not provide the agreed camera inspection and repair plan of the sewer lines."

---

[6]  *Id.* at § 13-8-3(A)-(F).

[7] Ridgeland, Miss., Site Plan Review Checklist, ¶¶ 23-24.

¶15. As a preliminary matter, we agree that Baymeadows' compliance with the PDA and its ability to submit repair plans for approval under the city ordinances are two distinct issues. Ridgeland cannot use a criminal pretrial diversion agreement as a basis to deny Baymeadows' right to make repairs to its property. If Baymeadows did not comply with the terms of the PDA, Ridgeland's only remedy is to resume prosecution. And if Baymeadows adequately complied with the city ordinances, then Ridgeland should have approved Baymeadows' submissions. Though the PDA expressly incorporated all of the documents which the Board deemed inadequate, we find Ridgeland also could have required these items under the ordinances.

¶16. Ridgeland's development-review procedures state that applicants must submit certain plans and drawings to the building official for review prior to applying for a building permit.[8] Section 13-8-3(F) of Ridgeland's development-review procedures provides that the city may request "such other data as may be required by the Building Official or City Engineer to ensure that the purposes of this Section are satisfied."[9] Thus, Ridgeland may require–consistent with "such other data" in Section 13-8-3(F)– a safety plan, erosion control plan, interior remodeling plan, camera inspection, and repair plan of the sewer lines.

¶17. Furthermore, Baymeadows corresponded only with the Department of Community Development concerning the documents it needed to supply prior to submitting its plans to

---

[8] Ridgeland, Miss., Developmental Review Procedure § 13-8-3.

[9] *Id.* at § 13-8-3(F).

8

the Architectural Review Board. Specifically, on May 12, 2011, Alan Hart, the Director of Community Development, wrote to Baymeadows indicating that the Public Works and Community Development Departments requested that Baymeadows submit fifteen additional items. The letter listed David Williams, the city engineer, as part of the Public Works Department, and it listed Chris Ramsey, the building official, as part of the Community Development Office. After submitting the additional items, Alan Hart further advised Baymeadows that the city planner and the building official had again reviewed Baymeadows' submissions and had found them complete. This correspondence indicates that the building official requested all documents necessary for submission of Baymeadows repair plans, in accordance with Section 13-8-3(F). Thus, Ridgeland properly requested the documents not expressly provided for in accordance with Section 13-8-3(F), which allows "such other data as may be required by the Building Official or City Engineer . . . ."[10]

¶18. The Board, however, claimed that Baymeadows failed to submit a camera inspection and repair plan of the sewer lines. Though, as stated above, Ridgeland could have required these items under the ordinances, Ridgeland never requested that Baymeadows include a camera inspection and sewer-repair plan in its submissions. The building official or city engineer would have had to request these items specifically, since the ordinances do not expressly require them–which they did not.[11] The city planner confirmed that Baymeadows

[10] *Id.*

[11] *Id.* at §13-8-3(A)-(F).

had submitted a complete repair-plan proposal without either of these items. Thus, the Board could not base its denial on items it never requested. Though the Board cannot consider the PDA as a basis for denying Baymeadows' right to receive approval of its repair plans, we find that the Board could have required the additional items in accordance with Section 13-8-3-(F) of Ridgeland's city ordinances.

### The Board improperly denied Baymeadows' proposed repair plans.

¶19.     Even if the Board properly considered Baymeadows' proposal under the ordinances, and not the PDA, the Board put forth no rationale as to why it deemed Baymeadows' safety plan, erosion-control plan, and interior remodeling plan "inadequate." Instead, in its minutes, the Board merely made the conclusory statement that Baymeadows "fail[ed] to provide an adequate safety plan, erosion control plan, [and] interior remodeling plan."

¶20.     This Court has explained that "the great weight of authority holds it to be a better form for a fact-finding administrative agency or commission to make a finding of facts on which to base an award or reject a claim."[12] If the commission fails to make such findings of fact, "the reviewing court is in the awkward position of trying to ferret out sufficient evidence from the record to avoid holding that the order of the commission is arbitrary and capricious or that it is based on substantial evidence."[13]

---

[12] *Duckworth v. Miss. State Bd. of Pharmacy*, 583 So. 2d 200, 202 (Miss. 1991) (citing *Fortune Furniture Mfg. Co. Inc. v. Sullivan*, 279 So. 2d 644, 647 (Miss. 1973)).

[13] *Duckworth*, 583 So. 2d at 202 (citing *Fortune Furniture Mfg. Co. Inc.*, 279 So. 2d at 647).

¶21.    We have applied this concept specifically to determinations made by a board of supervisors.[14] In ***Harrison v. Mayor and Board of Aldermen of City of Batesville***, a board approved a zoning variance which, under the Batesville Code, required a finding that the party seeking a variance suffered "practical difficulties or unnecessary hardships. . . ."[15] In granting the variance, the Board simply stated that the "variance is necessary in order to avoid practical difficulties or unnecessary hardship. . . " but it did not "shed any light upon what practical difficulties or unnecessary hardships existed."[16]   There, we found that the board "merely provided a conclusion with no finding of fact," and we determined that "'[f]indings of fact which show the actual grounds of a decision are necessary for an intelligent review of a quasi-judicial or administrative determination.'"[17]

¶22.    Similarly, here, the Board merely stated that Baymeadows' submissions were "inadequate," but it did not provide any explanation in its minutes as to what made them inadequate. We find it impossible to complete an intelligent review of the Board's determination without knowing why it deemed the safety plan, erosion-control plan, and interior remodeling plan inadequate. As such, we cannot determine if the Board's decision was supported by substantial evidence, was arbitrary and capricious, illegal, or beyond the

---

[14] ***Harrison v. Mayor and Bd. of Aldermen of City of Batesville***, 73 So. 3d 1145 (Miss. 2011).

[15] ***Id***. at 1153.

[16] ***Id***.

[17] ***Id***. (citing ***Matter of Gilbert v. Stevens***, 284 A.D. 1016 (N.Y.A.D. 3 Dept. 1954).

power of the Board. As we did in **Harrison**,[18] we find it necessary to remand this case to the Board for a hearing to supply the specific findings which supported the Board's decision.

¶23.   Baymeadows also makes the argument that the Board's denial violated both Baymeadows' Fourteenth Amendment substantive due-process and equal-protection rights and resulted in a "taking" under the Fifth Amendment. We find it imprudent to decide these issues prior to reviewing the specific facts underlying the Board's decision to deny the proposed repair plans, as these arguments may be affected as well.

### *Consideration of damages is premature.*

¶24.   At the time of this appeal, Baymeadows expressed concern that it may become divested of its property before the conclusion of this appeal, rendering this Court unable to order specific performance. As predicted, in August 2013, Baymeadows lost its apartment complex in foreclosure proceedings.  Baymeadows argues that this Court still may rule on the bill of exceptions and remand the case for damages under the Mississippi Tort Claims Act and other civil proceedings.  Because we have  no determination on the record before us pertaining to damages, any decision concerning damages would be both advisory and premature.

## CONCLUSION

¶25.   Because the Ridgeland Board of Aldermen provided no factual basis for its decision, we reverse its denial of Baymeadows' repair plans, as well as the affirmance of the Madison

---

[18] **Harrison,** 73 So. 3d. at 1156.

12

County Circuit Court and we remand this case to the Board either to issue the permit or provide an appropriate factual basis for its denial.

¶26.    **REVERSED AND REMANDED**.

**WALLER, C.J., RANDOLPH, P.J., LAMAR, KITCHENS, CHANDLER, PIERCE, KING AND COLEMAN, JJ., CONCUR.**