# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-EC-01327-SCT

*ELECTION COMMISSION OF THE TOWN OF*
*EDWARDS, MISSISSIPPI*

*v.*

*MARCUS L. WALLACE*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/02/2013 |
| TRIAL JUDGE: | HON. VERNON R. COTTEN |
| TRIAL COURT ATTORNEYS: | HOWARD BROWN |
| | ROBERT L. GIBBS |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT, |
| | SECOND JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | HOWARD BROWN |
| ATTORNEY FOR APPELLEE: | ROBERT L. GIBBS |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 07/31/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, P.J., LAMAR AND KITCHENS, JJ.**

**KITCHENS, JUSTICE, FOR THE COURT:**

¶1.     Marcus L. Wallace sought to run as an independent candidate in the June 4, 2013, mayoral election in Edwards, Mississippi. The Edwards Municipal Election Commission ("the Commission") declined to place his name on the ballot, questioning the validity of certain signatures on Wallace's petition for candidacy. Following an emergency appeal to this Court and a granted writ of mandamus directing the Commission to conduct a hearing, the Commission again denied Wallace's petition to be placed on the ballot. Because we agree with the determination of the Special Circuit Judge of the Second Judicial District of Hinds

County that the Commission improperly applied Mississippi Code Section 1-3-76 (Rev. 2005), and because we find that Wallace's name should have been placed on the mayoral ballot, we affirm.

## FACTS AND PROCEEDINGS BELOW

¶2. In an effort to secure placement on the ballot for the municipal election to be held in Edwards on June 4, 2013, on March 7, 2013, Wallace filed with a deputy municipal clerk of the Town of Edwards a Qualifying Statement of Intent and a Candidate Petition. Wallace's petition purported to include the signatures of sixty qualified electors pursuant to Mississippi Code Section 23-15-361(1)(a) (Rev. 2007).[1] The next day, March 8, 2013, the Election Commission met to certify candidates for the 2013 General Election. The Commission found the names of only thirty-three qualified voters among the sixty signatures on Wallace's petition for candidacy. Specifically, the Commission found that eighteen signatures were "invalid," that five signatures were "outside corporate limits," that three signatures were "not registered" voters, and that one signature was a "duplicate."

---

[1]Mississippi Code Section 23-15-361 (Rev. 2007) provides, in pertinent part, the following:

> (1)    The municipal election commissioner designated to have the ballots printed shall also have printed on the ballot in any municipal election the name of any candidate who, not having been nominated by a political party, shall have been requested to be a candidate for any office by a petition filed with the clerk of the municipality . . . and signed by not less than the following number of qualified electors:
>
> (a)    For an office elected by the qualified electors of a municipality having a population of one thousand (1,000) or more, not less than fifty (50) qualified electors.

¶3. On March 18, 2013, Wallace telephoned Municipal Election Commissioner Ethel Thomas-Heard regarding the purported invalidity of signatures on his petition and scheduled a meeting with the Commission for that same day. Wallace attended, accompanied by his attorneys, Robert Gibbs and Mary Margaret Waycaster. The Commission decided at the meeting that ten signatures it previously had deemed invalid were, in fact, valid signatures. Nevertheless, the Commission found that Wallace only had "43 and he must have 50 signatures to qualify as a candidate."

¶4. Then, on March 27, 2013, Wallace filed a "Petition to be Placed on the Ballot" as an independent mayoral candidate with the Commission.[2] The refusal of the Commission to schedule a hearing on Wallace's petition resulted in his filing an Emergency Complaint for Writ of Mandamus in the Circuit Court of the Second Judicial District of Hinds County. Wallace asked the circuit court to order the Commission to conduct a hearing on his petition. The circuit court conducted a hearing on April 23, 2013, and on the following day denied Wallace's Complaint for Writ of Mandamus.[3] Wallace then filed an emergency appeal in this Court. In a May 16, 2013, *en banc* order, this Court reversed and remanded the case, directing the circuit court to grant Wallace's Complaint for Writ of Mandamus. ***Wallace v. Election Comm'n of the Town of Edwards***, 118 So. 3d 568 (Miss. 2013). That same day, the circuit court ordered the Commission to conduct a hearing on Wallace's qualifying petition.

---

[2]This petition is not included in the record on appeal.

[3]Neither Wallace's Emergency Complaint for Writ of Mandamus nor the order of the Circuit Court of the Second Judicial District of Hinds County denying his complaint appears in the record on appeal.

¶5.    The hearing took place on May 21, 2013. Wallace, along with his attorney, presented to the Commission seven affidavits from individuals attesting that they previously had signed Wallace's initial Candidate Petition. The Commission, however, held that Mississippi Code Section 1-3-76[4] applied and that the statutory procedure for contesting the disqualification of signatures had not been followed. Aggrieved, Wallace filed a Bill of Exceptions and Notice of Appeal on May 28, 2013. Following the recusal of all circuit judges of the Second Judicial District of Hinds County (Judges Green, Kidd, Gowan, and Weill), this Court appointed the Honorable Vernon R. Cotten as a special judge to preside over the matter.

¶6.    Judge Cotten, following a hearing on Wallace's Bill of Exceptions and Notice of Appeal, conducted a hearing on June 6, 2013. In Findings of Fact and Conclusions of Law entered July 22, 2013, he found that, "[w]ith no evidence to contradict these affidavits, the Court finds that the Election Commission committed error[] when it failed to consider the affidavits presented by Wallace" and that Section 1-3-76 was inapplicable. Judge Cotten set aside the June 4, 2013, mayoral election and ordered a new election with Wallace's name on

---

[4] Mississippi Code Section 1-3-76 (Rev. 2005) provides the following:

When any petition is filed by qualified electors of a county or municipality requesting a vote on matters affecting all or any portion of a county or municipality, the certifying official shall post a list of all names disqualified from the petition and the reason for disqualification at the courthouse or city hall, as the case may be. A person whose signature has been disqualified by the certifying official may, within ten (10) days after said notice has been posted, appear before such certifying official and present evidence of his qualification accompanied by a notarized affidavit stating the reason that his signature is qualified for the petition. Based upon such information, the certifying official shall reconsider his disqualification and may allow the signature to be counted if such action appears justified.

4

the ballot, certifying the circuit court's findings to the Governor, "who has the exclusive power to do all things necessary to effectuate a new election. . . ." Jack Wilson, Legal Counsel to the Governor, sent a letter on August 1, 2013, telling Judge Cotten that:

> [i]t is my understanding that this case was appealed to the Circuit Court pursuant to Miss. Code Ann. § 11-51-75,[5] in accordance with ***Town of Terry v. Smith***, 49 So. 3d 507 (Miss. 2010), which the Supreme Court seems to consider an ordinary civil appeal rather than a true election contest under the Mississippi Election Code. *See id.*, ¶ 8 ("[T]he [plaintiff] came to circuit court not to challenge an election, but to challenge the decision (made by a municipal authority) [excluding a candidate from the general election ballot].")

On August 2, 2013, Judge Cotten entered a Final Judgment, adjudicating that Wallace had qualified as an independent candidate for mayor and ordering that an election be held, with Wallace's name on the ballot, on September 3, 2013. The Commission appeals to this Court.

¶7.    On appeal, the Commission raises the following five issues:

    **I.    Whether the Commission's decision that Wallace did not have a sufficient number of qualified signatures on his Petition to be an Independent Candidate for Mayor was reasonable and fairly debatable such that their decision should have been upheld by the circuit court.**

    **II.    Whether the circuit court's order setting a special election violates the doctrine of separation of powers based on the facts of this case.**

---

[5] Mississippi Code Section 11-51-75 (Rev. 2012) provides the following:

Any person aggrieved by a judgment or decision of the board of supervisors, or municipal authorities of a city, town, or village, may appeal within ten (10) days . . . and may embody the facts, judgment and decision in a bill of exceptions . . . . The clerk thereof shall transmit the bill of exceptions to the circuit court at once, and the court shall either in term time or vacation hear and determine the same of the case as presented by the bill of exceptions as an appellate court, and shall affirm or reverse the judgment.

**III.    Whether the burden of proof was improperly placed on the Commission.**

**IV.    Whether the circuit court improperly found that Miss. Code Ann. § 1-3-76 does not apply to the facts of this case.**

**V.    Whether the fact that no election contest was filed in this case is outcome determinative.**

¶8.    In reviewing the determination of the circuit court, we address the application of Section 1-3-76 and whether the Commission erred by failing to accept seven affidavits submitted by Wallace in support of his petition for candidacy. We find no merit in the Commission's remaining arguments.

## DISCUSSION

¶9.    The parties disagree respecting which standard this Court must apply in reviewing the present case. The Commission asserts that the standard of review applied to bills of exception[6] is limited to a review of the record "of the testimony made or proffered, to determine whether or not the acts and orders of the board are reasonable and proper or arbitrary or capricious or beyond the power of the board to make or whether they violate any constitutional right of the complaining party." *Riley v. Jefferson Davis County*, 669 So. 2d 748, 750 (Miss. 1996). The Commission argues that its decision that all of the signatures affixed to Wallace's candidacy petition could not be counted in accordance with the applicable election statutes was "fairly debatable," and thus not "arbitrary and capricious." *See City of Biloxi v. Hilbert*, 597 So. 2d 1276, 1280-81 (Miss. 1992) (quoting *Saunders v. City of Jackson*, 511 So. 2d 902, 906 (Miss. 1987)) ("'fairly debatable' is the antithesis of

---

[6] *See* Miss. Code Ann. §11-51-75 (Rev. 2012).

6

arbitrary and capricious. If a decision is one which could be considered 'fairly debatable,' then it could not be considered arbitrary and capricious . . . ."). Because "many of the signatures looked the same," because the Commissioners have "been trained" not to count signatures having the same appearance, and because "[n]one of [the individuals whose signatures were disqualified by the Commission] contested the disqualification of their name[s] in accordance with this statutory scheme," Section 1-3-75, the Commission argues that its decision to withhold Wallace's name from the mayoral ballot was fairly debatable and thus not arbitrary and capricious.

¶10. Conversely, Wallace claims that, because "[t]he decision of the Election Commission was based entirely on its interpretation of [Section] 1-3-76, not on any disputed facts," the "issue before this Court is strictly a matter of law." "Legal errors are subject to a *de novo* review." ***Baymeadows, LLC v. City of Ridgeland***, 131 So. 3d 1156, 1059 (Miss. 2014) (quoting ***ABC Mfg. Corp. v. Doyle***, 749 So. 2d 43, 45 (Miss. 1999)). Following Wallace's submission of seven affidavits at the Commission hearing, the Commission denied Wallace's petition pursuant to Section 1-3-76, holding that the statutory "procedure has not been followed with the presentation of the affidavits submitted in today's hearing." The circuit court reversed, holding that Section 1-3-76 did not apply and, as a matter of law, that the Commission had "acted [in an] arbitrary, capricious, discriminatory, unlawful, [and] unreasonable [manner] and the decision was not supported by substantial evidence."

¶11. We agree with Wallace that the proper standard of review with regard to the applicability of Section 1-3-76 is *de novo*. *See* Miss. Code Ann. § 23-15-69 (Rev. 2007) ("All cases on appeal shall be heard by the boards of election commissioners de novo . . . . The

7

decisions of the commissioners in all cases shall be final as to questions of fact, but as to matters of law they may be revised by the circuit courts and the Supreme Court.") The Commission's May 21, 2013, order found that Section 1-3-76 applied and that the signatories had failed to comply with the statutory requirements for contesting the disqualification of their purported signatures. The Commission at no point made substantive findings of fact with regard to the invalidity of the signatures. The Commission made no finding that the signatures "looked the same," as it asserted to this Court on appeal. In the absence of specific findings of fact by the Commission with regard to the validity of signatures on Wallace's candidacy petition or some other factual determination, the determination by the Commission that Section 1-3-76 applies, and the holding by the circuit court reversing the Commission's determination, demonstrate a pure question of law, subject to *de novo* review by this Court.

¶12.    No reported cases guide this Court's analysis of Section 1-3-76. This Court long has held that "[w]hen the language used by the legislature is plain and unambiguous . . . and where the statute conveys a clear and definite meaning . . . the Court will have no occasion to resort to the rules of statutory interpretation." ***Miss. Ethics Comm'n v. Grisham,*** 957 So. 2d 997, 1001 (Miss. 2007) (quoting ***Marx v. Broom***, 632 So. 2d 1315, 1318 (Miss. 1994) (citing ***State v. Heard***, 246 Miss. 774, 151 So. 2d 417 (1963))) (emphasis omitted). "Instead, '[c]ourts have a duty to give statutes a practical application consistent with their wording, unless such application is inconsistent with the obvious intent of the legislature.'" ***Grisham***, 957 So. 2d at 1001 (quoting ***Marx***, 632 So. 2d at 1318 (citing ***Thornhill v. Ford***, 213 Miss. 49, 56 So. 2d 23 (1952))) (emphasis omitted). In accordance with these cases, the circuit

court divided Section 1-3-76 "into parts, in a way to help understand and decide its true meaning."

¶13. Section 1-3-76 is limited by its language to situations where "any petition is filed by qualified electors of a county or municipality . . . ." The circuit court held that "no petition [was] filed by qualified electors." Rather, Wallace sought inclusion on the mayoral ballot as an independent candidate pursuant to Section 23-15-361(1)(a), which requires, "[f]or an office elected by the qualified electors of a municipality having a population of one thousand (1,000) or more," the signatures of "not [fewer] than fifty (50) qualified electors . . . ." We agree with the circuit court's exposition of this clause of Section 1-3-76 and find the "petition filed by qualified electors" contemplated by Section 1-3-76 to be wholly separate and distinct from the requirements of Section 23-15-361(1)(a).

¶14. Further, the language of Section 1-3-76 contemplates a scenario in which the qualified electors are "requesting a vote on matters affecting all or any portion of a county or municipality." The circuit court provided the following examples:

> [I]f qualified electors filed a petition seeking to recall an Alderperson, this would be a request that would affect a part of a municipality. Or if qualified electors filed a petition seeking to recall the Mayor – this would be a request that affect[s] all of the municipality. Wallace was not requesting a vote that affected the town of Edwards, or any portion of it. He was simply requesting to be placed on the ballot.

We agree with the circuit court that Section 1-3-76 does not apply to the present circumstance. The qualified electors of Edwards are not "requesting a vote" regarding any matter, even if Wallace's inclusion on the mayoral ballot potentially could affect the entire municipality if the people were to elect him mayor. Wallace, pursuant to Section 23-15-

9

361(1)(a), merely is seeking, as an individual citizen, to have his name printed on the mayoral ballot as an independent candidate, since he was not nominated by a political party. Section 23-15-361(1)(a) exclusively applies to the present circumstance, and Section 1-3-76 is, by its plain language, inapplicable.

¶15. The Commission denied Wallace's candidacy petition on May 21, 2013, finding that the seven affidavits Wallace had obtained, containing a total of eight signatures, did not comply with the statutory requirement that the persons whose signatures were disqualified appear within ten days after the posting of notice. The circuit court reversed the Commission and held that "[w]ith no evidence to contradict these affidavits, the Court finds that the Election Commission committed error when it failed to consider the affidavits presented by Wallace." Each of the seven affidavits submitted to the Commission, having been subscribed and sworn before Notary Public Katisha L. Griffith and bearing her seal, contained the following:

1. I am over the age 21 and competent to make the following statement.

2. I am a resident citizen and qualified elector of the Town of Edwards, Mississippi.

3. I was presented a Candidate Petition for Marcus L. Wallace to qualify as an independent candidate for the Mayor of the Town of Edwards, Mississippi.

4. The signature affixed to the Candidate Petition that was disqualified by the Town's Election Commission is my signature.

¶16. Though this matter was not presented to the circuit court as a motion for summary judgment, the circuit court noted that Mississippi Rule of Civil Procedure 56 "allows judgments to be entered with the use of affidavits." Rule 56(e) provides:

10

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as may be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matter therein.

The circuit court found that, in the absence of any contradiction of the affidavits, "the Election Commission was duly bound to credit Wallace with eight (8) signatures. This results in Wallace['s] having fifty-one (51) qualified electors signing his Qualifying Statement and pursuant to [Section] 23-15-361(1)(a), the Election Commission must place Marcus Wallace on the ballot as an independent candidate for the Mayor of the Town of Edwards."

¶17. Indeed, at the hearing in circuit court on Wallace's Bill of Exceptions, the Commission continued to argue that Section 1-3-76 applied. The attorney for the Commission stated that "it's undisputed that the commissioners were presented with the affidavits and none of the individuals appeared to address the issues of their affidavits – of their signatures being disqualified." He went on to state, "And I think it's undisputed, Your Honor, that the commissioners rejected, if that's the right word, each affidavit. And it's our position that each affidavit was rejected based on 1-3-76." But the attorney for the Commission could do no more than speculate about the reasons the affidavits were not accepted. One affidavit contained two signatures. Another was undated. The circuit court opined, "[s]imply because an affidavit does not include the day it was signed[] does not make it invalid. . . . Again, the Court is not aware that an affidavit becomes invalid because more than one person signed it. In fact, the Court sees no reason to invalid [sic] either signature, since no evidence was presented at the hearing to contradict the affidavits."

¶18. The affidavits before the Commission were signed and sworn and bore the seal and signature of a notary public of this state. The "undated" affidavit was, in fact, partially dated,

11

containing "March, 2013." Only the numeric date was omitted. In the absence of contradictory evidence presented to contest those affidavits, we cannot say that the circuit court erred in its holding that the Commission was bound to credit Wallace with the signatures appearing on the affidavits. The uncontroverted affidavits in the record raise the total number of signatures on Wallace's petition for candidacy to a statutorily sufficient number and, therefore, qualify Wallace to be placed on the ballot. *See* Miss. Code Ann. § 23-15-361(1)(a).

## CONCLUSION

¶19.    For the foregoing reasons, we affirm the Findings of Fact and Conclusions of Law and the Final Judgment of the Circuit Court of the Second Judicial District of Hinds County. The Election Commission of the Town of Edwards, Mississippi, is hereby ordered forthwith to place the name of Marcus L. Wallace on the ballot as a qualified independent candidate for the Office of Mayor and to hold a new election in accordance with the Final Judgment of the Circuit Court of the Second Judicial District of Hinds County.

¶20.    **AFFIRMED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, CHANDLER, PIERCE, KING AND COLEMAN, JJ., CONCUR.**