# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2018-CC-00932-SCT

*WALTER JONES*

*v.*

*THE CITY OF CANTON, MISSISSIPPI, FRED ESCO, JR., INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS ALDERMAN, LES A. PENN, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS ALDERMAN, DAPHNE JOHNSON SIMS, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY AS ALDERWOMAN, ERIC GILKEY, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS ALDERMAN, AND ANDREW GRANT, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS ALDERMAN*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/05/2018 |
| TRIAL JUDGE: | HON. STEVE S. RATCLIFF, III |
| TRIAL COURT ATTORNEYS: | JOHN W. CHRISTOPHER |
| | KIMBERLY BANKS |
| | PIETER TEEUWISSEN |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JOHN W. CHRISTOPHER |
| ATTORNEYS FOR APPELLEES: | PIETER TEEUWISSEN |
| | KIMBERLY BANKS |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | REVERSED AND RENDERED - 09/26/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE KING, P.J., MAXWELL AND GRIFFIS, JJ.**

**GRIFFIS, JUSTICE, FOR THE COURT:**

¶1.     Walter Jones appeals the order of the Circuit Court of Madison County affirming his

removal as trustee of the Canton Public School District (CPSD) by the Board of Aldermen

(the Board) of the City of Canton (the City). Jones argues that the Board lacked the authority to remove him as a public official. Finding that the Board's actions were prohibited by the Mississippi Constitution, we agree.

## FACTS AND PROCEDURAL HISTORY

¶2.     Jones served as a trustee of the CPSD, appointed by the Board under Mississippi Code Section 37-7-203 (Supp. 2017).[1]  His last appointment to a five-year term occurred in February 2016.

¶3.     On February 20, 2018, William Truly, mayor of the City of Canton, and the Board met at Canton City Hall for a duly called meeting of the governing authorities.  Truly determined the Board had a quorum, with only one alderman not in attendance.  During the meeting, the Board discussed concerns involving CPSD.  The meeting's minutes reflect the following:

> There came on for consideration before the Board the matter of a school board member appointment.  Alderwoman Daphne Sims expressed concern that the City was supposed to be kept abreast by the School Board members of school issues, and no one has been before the City Board to keep them abreast of the issues of the District.  The Mayor addressed whether it was legal for an employee of the School District who sits on the Board of Aldermen to vote on the issues of the School District.  When requested, Attorney Banks advised the Board on the statutory conditions to remove a Board member, per the Attorney General Opinions on the matter.  Alderwoman Sims made the motion to remove Walter Jones, whose term will expire in 2021, for cause for being unwilling to serve and unwilling to keep the City abreast of what is going on in the school system, and replace him with Timothy Scott.  Alderman Penn seconded the motion.

---

[1] School district boards of trustees "shall consist of five (5) members, each to be chosen for a term of five (5) years" and "shall be elected by a majority of the governing authorities of the municipality at the first meeting of the governing authorities held in the month of February of each year, and the term of office of the member so elected shall commence on the first Saturday of March following."  Miss. Code Ann. § 37-7-203.

A majority of the aldermen voted in favor of the motion to remove Jones, and the mayor declared that the motion was carried by majority vote.

¶4.     While the minutes reflect no authority for removal, Section 2-55 of the City's Code of Ordinances states that the Board shall remove "[e]very officer or employee who shall refuse or willfully neglect to perform the duties imposed upon him by law, this Code or ordinance . . . or for any satisfactory cause."

¶5.     CPSD and Jones filed a bill of exceptions in the Madison County Circuit Court, challenging the decision of the Board to remove Jones as a trustee of CPSD. The circuit court affirmed the action of the Board.

¶6.     Jones now appeals, raising the issues of whether the Board had the legal authority to remove a school-district trustee and whether the circuit court committed reversible error by affirming.

## STANDARD OF REVIEW

¶7.     "The bill of exceptions serves as the record on the appeal of a decision by a municipal authority." *McAdams v. Perkins*, 204 So. 3d 1257, 1261 (Miss. 2016) (citing *Stewart v. City of Pascagoula*, 206 So. 2d 325, 328 (Miss. 1968), *superseded by rule as stated in City of Jackson v. Allen*, 242 So. 3d 8 (Miss. 2018)). "[D]ecisions by the governing authorities of a municipality are subject to limited review." *Id.* (citing *McWaters v. City of Biloxi*, 591 So. 2d 824, 827 (Miss. 1991)). A decision will be overturned "only if the decision (1) was beyond its scope or power; (2) violated the constitutional or statutory rights of the aggrieved party; (3) was not supported by substantial evidence; or (4) was arbitrary or capricious." *Id.*

3

(citing *Baymeadows, LLC v. City of Ridgeland*, 131 So. 3d 1156, 1169 (Miss. 2014)).

**ANALYSIS**

¶8.     The parties agree that no statutory authority exists to grant a board of aldermen the power to remove a school-board trustee from such position. The relevant inquiry is whether a board of aldermen requires such authority. The circuit court decided no; in the absence of direct constitutional or legislative direction, a local government may rely on Mississippi Code Section 21-17-5 (Supp. 2016), the Home Rule statute, which vests local government with broad authority. Because the Home Rule statute only permits action not inconsistent with relevant Mississippi law, we must decide whether the Board's action was inconsistent with applicable statutes or the Mississippi Constitution.

¶9.     The Legislature provides "for the establishment, maintenance, and support of free public schools upon such conditions and limitations as the Legislature may prescribe." Miss. Const. art. 8, § 201. To carry out this constitutional mandate, the Legislature enacted the Mississippi Uniform School Law of 1986, which provides for the formation of local school districts with autonomous school boards. Miss. Code Ann. §§ 37-6-1 to -15 (Rev. 2013). Each school board consists of five members, selected in the manner provided by law. Miss. Code Ann. § 37-6-7 (Rev. 2013). The selection of trustees, along with their term and qualifications, is covered extensively in Section 37-7-203, including instructions about how to fill a vacancy on the school board. While the Legislature provides for the establishment of a school board and the appointment of trustees to the school board, it has remained silent about removing a trustee from the school board.

¶10.    The Mississippi Constitution provides that "[a]ll public officers, for wilful neglect of duty or misdemeanor in office, shall be liable to presentment or indictment by a grand jury; and, upon conviction, shall be removed from office, and otherwise punished as may be prescribed by law."  Miss. Const. art. 6, § 175.  The Legislature gives similar instruction in the general removal statute, "Removals from Office," which requires the removal of "any public officer, state, district, county[,] or municipal" who is convicted of a felony or found to be of unsound mind.  Mississippi Code Section 25-5-1 (Rev. 2018).  Neither the Constitution nor the Legislature expressly limits removals to these particular circumstances.

¶11.    Even so, the attorney general's office has repeatedly asserted the rule that, "[o]nce appointed, a trustee of a municipal separate school district serves for a term of five years and can only be removed pursuant to a specific statutory provision."  Miss. Att'y Gen. Op., No. 2001-0239, 2001 WL 523513, *Brahan*, at *1 (Apr. 27, 2001).  Regarding appointments to terms of office on a local board, "[t]he statute under which the appointment was made might have provision for removal for cause.  Further, general statutes provide for removal of officers in the case of conviction of a crime or in cases where the public officer is found to be of unsound mind."  Miss. Att'y Gen. Op., No. 2000-0041, 2000 WL 300228, *Green*, at *1 (Feb. 11, 2000). *See also* Miss. Att'y Gen. Op., No. 1999-0638, 1999 WL 1333436, *Walters*, at *1 (Dec. 3, 1999); Miss. Att'y Gen. Op., No. 93-0735, 1993 WL 425327, *Raulston*, at *1 (Sep. 30, 1993); Miss. Att'y Gen. Op., 1985 WL 193063, *Finch*, at *1 (Oct. 24, 1985).

¶12.    This Court has relied on Section 175 of the Mississippi Constitution to apply the

attorney general's rule to officers of other local boards, as in *Mississippi State Board of Health v. Matthews*, 113 Miss. 510, 74 So. 417 (1917). Matthews was removed as county health officer of Leflore county by the Mississippi State Board of Health. *Id.* He had previously been appointed to a statutory two-year term by the board of health. *Id.* Matthews contended that his removal violated Section 175 of the Mississippi Constitution, which provides that "[a]ll public officers, for willful neglect of duty or misdemeanor in office, shall be liable to presentment or indictment by a grand jury; and, upon conviction, shall be removed from office, or otherwise punished as may be prescribed by law." Miss. Const. art 6, § 175. On appeal, the Court found that Section 175 of the Mississippi Constitution "provides the exclusive method by which a public officer may be removed from office." *Matthews*, 74 So. at 418.

¶13.     The Court also found that "[S]ection 175 of the Constitution of 1890 of the state provides the exclusive mode, where the removal is sought on a charge of willful neglect of duty or misdemeanor in office" in *Lizano v. City of Pass Christian*, 96 Miss. 640, 50 So. 981, 981 (1910). There, the mayor and board of aldermen sought to impeach and remove a city marshal, an elected official, for willful neglect and misdemeanor in office. *Id.* They claimed authority from an ordinance that provided for the impeachment and removal of elective officers that did not require indictment or conviction. *Id.* The Court found this ordinance to be in conflict with the Constitution. *Id.* at 982.

¶14.     This Court has not ruled on the matter of a school-board trustee removal, but Jones, a school-board trustee, is a public officer like the appointed county-health officer in

*Matthews* and the elected city marshal in *Lizano*. Like Matthews and Lizano, Jones was removed from his position for alleged neglect of duties. Section 175 of the Constitution applies to all public officers, and this Court has established that Section 175 is the exclusive means of removal of public officers. Miss. Const. art 6, § 175; *Matthews*, 74 So. at 418. Applying the Court's reasoning in *Matthews* and *Lizano*, Jones may be removed only in accordance with Section 175 of this state's Constitution.

¶15.    The City argues, however, that because Mississippi law is silent on removal of school-board trustees and because removal of school-board trustees is not expressly prohibited, the Board was free to exercise authority to remove Jones from office. The City uses Section 21-17-5, the Home Rule statute, to justify the Board's action.

¶16.    Section 21-17-5(1) provides that,

> The governing authorities of every municipality of this state shall have the care, management and control of the municipal affairs and its property and finances. In addition to those powers granted by specific provisions of general law, the governing authorities of municipalities shall have the power to adopt any orders, resolutions or ordinances with respect to such municipal affairs, property and finances which are not inconsistent with the Mississippi Constitution of 1890, the Mississippi Code of 1972, or any other statute or law of the State of Mississippi, and shall likewise have the power to alter, modify and repeal such orders, resolutions or ordinances.

Miss. Code Ann. § 21-17-5(1) (Rev. 2015). "Thus, the Home Rule statute grants municipalities the right to adopt ordinances with regard to their 'municipal affairs' but only if said ordinances are not inconsistent with state legislation and/or the Mississippi Constitution." *Maynard v. City of Tupelo*, 691 So. 2d 385, 387 (Miss. 1997). This power is "complete without the existence of or reference to any specific authority granted in any

7

other statute or law of the State of Mississippi," with eight exceptions.[2] Miss. Code Ann. § 21-17-5(1).

¶17. Because the Legislature did not include the removal of public officers among the exceptions, the City argues that the removal of officers appointed by municipal governing authorities is not prohibited. The City correctly states that the rules of statutory construction require "the inference that items not mentioned are excluded by deliberate choice, not inadvertence." *USF&G Ins. Co. of Miss. v. Walls*, 911 So. 2d 463, 466 (Miss. 2005). Therefore, the City argues that the absence of a prohibition on the Board, Canton's governing authority, from removing a public officer allows the Board to exert its power under the Home Rule statute.

¶18. Before 1992, a city could "only exercise such powers as are delegated by the Legislature" and had "no power except that delegated to it by the state," such that its powers were "to be construed most strongly against an asserted right not clearly given and [could

---

[2] The exceptions are categories of action that a municipality cannot take unless authorized by statute: (a) levy taxes of any kind or increase the levy of any authorized tax, (b) issue bonds of any kind, (c) change the requirements, practices or procedures for municipal elections or establish any new elective office, (d) change the procedure for annexation of additional territory into the municipal boundaries, (e) change the structure or form of the municipal government, (f) permit the sale, manufacture, distribution, possession or transportation of alcoholic beverages, (g) grant any donation, or (h) without prior legislative approval, regulate, directly or indirectly, the amount of rent charged for leasing private residential property in which the municipality does not have a property interest.

Miss. Code Ann. § 21-17-5(2) (Supp. 2016).

8

not] be extended by mere implication . . . ." *Hattiesburg Firefighters v. City of Hattiesburg*, 263 So. 2d 767, 769 (Miss. 1972). City ordinances were struck down if the Legislature had not given the City express authority to enact the ordinance. *See Videophile, Inc. v. City of Hattiesburg*, 601 F. Supp. 552, 553-54 (S.D. Miss 1985), *superseded by statute as stated in J & B Entm't, Inc. v. City of Jackson, Miss.*, 152 F.3d 362 (5th Cir. 1998). In 1992, the Legislature increased the power of municipalities by amending Section 21-17-5(1) to read,

> The governing authorities of every municipality of this state shall have the care, management and control of the municipal affairs and its property and finances. *In addition to those powers granted by specific provisions of general law, the governing authorities of municipalities* shall have the power to adopt any orders, resolutions or ordinances with respect to such municipal affairs . . . which are not inconsistent with [Mississippi law.]

Miss. Code Ann. § 21-17-5(1) (emphasis added). Thus, a city no longer requires authorization from the Legislature to adopt orders, resolutions, or ordinances. *J & B Entm't, Inc.*, 152 F.3d at 378 n.16.

¶19.    The City draws our attention to Section 2-49 of the Canton Code of Ordinances, which states that every officer, unless otherwise specifically provided, shall serve at the pleasure of the mayor and the alderman, and to Section 2-55, which provides that every officer who shall willfully neglect to perform the duties imposed upon him, or for any satisfactory cause, shall be removed from office. In light of *Matthews* and *Lizano*, Section 2-55 of the Canton Code of Ordinances violates Section 175 of the Mississippi Constitution, which provides for the exclusive removal of public officers who have willfully neglected their duties.

¶20.    Additionally, the record shows no evidence of Jones's being given due process in his removal. Procedural due process requires that a person who is subject to adverse government

9

action receive notice of the charges against them, an explanation of the employer's evidence, and an opportunity to be heard. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985). In another case regarding an appointed public official's removal from office, the Court found that

> [T]he authority conferred on the board of health to remove the factory inspector can be exercised only upon 'charges, notice, and an opportunity to be heard.' While the board of health under the statute in question has the authority to remove the factory inspector for cause, this cause must be a good cause, and not a mere arbitrary exercise of the authority thus conferred. The factory inspector must be informed of the nature of the charges preferred against him, and an opportunity must[] be afforded him to be heard; in other words, he is entitled to his day in court.

*State v. McDowell*, 111 Miss. 596, 71 So. 867, 868 (1916). The Board's decision was made without notice or hearing, leaving Jones to the whims of the Board in violation of Jones's due-process rights.

## CONCLUSION

¶21. Because the Board's authority was based on a city ordinance inconsistent with the Mississippi Constitution and because the Board's action violated Jones's right to due process, we reverse and render the circuit court's decision to affirm the Board's removal of Jones as school-board trustee.

¶22. **REVERSED AND RENDERED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR.**